## Congress Hotel Company et al. v. Samuel, Mayor, et al.

*J. Shanis*, for plaintiffs.

*Frank F. Truscott*, city solicitor, and *G. C. Farrier*, assistant city solicitor, for defendants.

Bok, P. J., September 30, 1948.—This is a bill in equity brought against the mayor and the director of public safety, plus an intervening defendant, by the

owners of various hotels on Walnut Street, in which plaintiffs seek an injunction against the enforcement of a city ordinance dated June 17, 1947, regulating the dimensions of signs that project into the street.

Answers have been filed, and testimony was taken on June 18, 1948.

### Findings of Fact

1. Plaintiffs are Congress Hotel Company, Hotel St. Francis, Hotel St. James Annex Company, Hotel Senator, Barton Hotel, and Walnut Hotel, all engaged in the hotel business with their places of business on Walnut Street in the City of Philadelphia.

2. Defendants are Bernard Samuel, Mayor of the City of Philadelphia, and James H. Malone, Director of Public Safety of the City of Philadelphia, and The Walnut Street Business Association, which has been permitted to intervene as additional party defendant by reason of its interest in the enforcement of the ordinance in question.

3. In connection with the operation and furtherance of their respective businesses plaintiffs have erected and are maintaining in front of their respective properties signs projecting more than eighteen inches in front of the revised building line of Walnut Street.

4. The Act of April 16, 1838, P. L. 626, sec. 3, conferred upon Council of the City of Philadelphia the power:

"From time to time, by ordinance, to make and establish such and so many rules and regulations as to them may seem expedient, for the better regulation of . . . awnings, awning posts or other device or thing, projecting over, under, into or otherwise occupying the sidewalks or any other portion of any of the streets, lanes and alleys."

5. On June 17, 1947, an ordinance passed by city council was signed and approved by the Mayor of the

City of Philadelphia and became effective from that date henceforth, which provided:

"Section 1. The Council of the City of Philadelphia ordains, That Section 1 of the ordinance approved July 26, 1920, entitled 'An Ordinance to regulate signs and other advertising devices projecting beyond the building line on Chestnut Street, between the Delaware and Schuylkill rivers, and providing a penalty for the violation of this ordinance,' be and the same is hereby amended to read:

" 'Section 1. The Council of the City of Philadelphia ordains, That from and after the passage of this ordinance it shall be unlawful for any person, corporation, organization or firm to place or cause to be placed, or to allow to remain, on any building, or on any thing or structure attached or unattached to any building situated on Chestnut street and Walnut street, between the Delaware and Schuylkill rivers, any sign or other device which shall project more than eighteen inches in front of the revised building line, as regulated by the present ordinance: Provided, That no 'For Sale' and 'For Rent' signs shall project at all, but shall be placed flat against the buildings.' "

6. The ordinance of July 26, 1920, which is amended by the aforesaid ordinance of June 17, 1947, directs the department of public safety to give notice to all persons having or maintaining any sign violating the provisions of this ordinance, requiring them to remove the same within 60 days. Section 9 of an intervening ordinance, that of March 27, 1936, reduced the notice period from 60 to 15 days.

7. On January 8, 1948, there was left at each of the premises at which signs were being illegally maintained, and served upon the occupants thereof, including the premises operated by plaintiffs upon which their businesses are conducted and their respective signs maintained, notices to tear down and remove

the above-mentioned illegal signs from the respective premises within 15 days or the same would be removed by the city.

8. The aforesaid signs have not been removed.

### Discussion

Plaintiffs are asking for an injunction enjoining defendants from enforcing the provisions of an ordinance adopted June 17, 1947. This ordinance amends an ordinance of July 26, 1920, regulating signs and other advertising devices extending beyond the building lines on Chestnut Street between the Schuylkill River and Delaware River. The amendment of 1947 extended the provisions of the 1920 ordinance to include Walnut Street. The ordinance provides that it shall be unlawful to place or allow to remain on any building or structure, any sign or device projecting more than 18 inches beyond the building line. This ordinance was adopted by the city council under the authority of the Act of April 16, 1838, P. L. 626, sec. 3, conferring upon Council of the City of Philadelphia the power "from time to time, by ordinance, to make and establish such and so many rules and regulations as to them may seem expedient for the better regulation of . . . awnings, awning posts or other device or thing projecting over, under, into or otherwise occupying the sidewalk or any other portion of any of the streets, lanes and alleys."

Plaintiffs complain, among other things, that the ordinances are in restraint of trade, are derogatory of their right to freedom of speech, are unconstitutional and void, are of no common benefit, are discriminatory, confiscatory and in the nature of class legislation; that the provisions of the ordinances are unreasonable and oppressive; and that the notices given are not in accordance with the ordinances.

Plaintiffs' bill must be dismissed. The grounds of complaint set forth in the bill show that plaintiffs are apparently confusing the right to use private property with the privilege of using public property and the air space over it. In the case of signs wholly on private property, the municipality, under the police power delegated to it by the State, may regulate all structures within its corporate limits, provided the regulations bear a substantial relation to the maintenance of the health, safety, morals, and welfare of the community. See cases collected in 72 A. L. R. 465. But where signs or other devices project over public property or encroach upon the air space over it, the law is clear that the municipality may regulate them without regard to the public safety, welfare, and morals, and may do so on the theory that no one has a right to appropriate to himself that which belongs to the public. In Reimer's Appeal, 100 Pa. 182 (1882), a decree of the lower court enjoining the maintenance of a bay window extending more than three feet beyond the building line was sustained on the ground that the public has the right to pass over the road and footway, and that right carries with it the right to light, air, and view. The court pointed out that projecting windows interfere to some extent with the ordinary and proper enjoyment of rights which are free to all, "and one who appropriates the space above the footway creates a purpresture by making several to himself that which ought to be common to many."

To the same effect was the holding in Lenon v. Porter, 65 Pa. Superior Ct. 94 (1916), that under the Act of 1838 council may enact an ordinance providing that within 90 days all awnings and poles on sidewalks of a particular street, shown to be a busy trading street, shall be removed. In affirming a decree dismissing a bill for an injunction, the court pointed out that whoever asserts a right to maintain any

structure extending over any part of a public street must show legislative authority therefor or municipal license authorized by statute. The court said (p. 98) :

"It is clearly within the power of the legislature to at any time prohibit the maintenance by owners of abutting property of any structures connected with their buildings extending over public streets, and this power they may delegate to municipalities, to be exercised within the municipal limits."

It was also complained that the ordinance was invalid since it applied only to a particular street, but the court dismissed that objection by declaring that regulations which are necessary in some places because of peculiar conditions, may be unnecessary and burdensome elsewhere, and it is the province of the municipal authorities to determine the advisability of such regulations.

An examination of the authorities in other States discloses a similar result. In Oppenheim Apparel Co. v. Cruise, 118 Misc. Rep. 368, 194 N. Y. Supp. 183, (1922), an ordinance forbidding signs at right angles to buildings on certain specified streets was upheld and a bill to restrain city authorities from removing plaintiff's signs which had been maintained previously under license from the city, was dismissed. Plaintiff claims the ordinance was discriminatory and unconstitutional since it denied to those engaged in business on the specified streets the privilege of using signs to advertise their businesses. Under the New York Charter, the board of aldermen was given authority similar to that conferred on our city council by the Act of 1838. The court there stated that the board of aldermen are the judges as to what ordinances will best preserve the interests of the municipality and unless the ordinance is wholly arbitrary and unreasonable, it should be upheld. It said further that a multiplication of signs in a busy part of a city can

become an eyesore, a nuisance and an improper use of the air space over the thoroughfares.

City of St. Louis v. St. Louis Theatre Co., 202 Mo. 690, 100 S. W. 627 (1907), involved an ordinance prohibiting signs extending upon or over a sidewalk more than 18 inches. In holding that such ordinance was not unreasonable on its face, the court stated that municipal corporations are prima facie the sole judges of the necessity of their ordinances and the courts will not ordinarily review their reasonableness when they have been passed in strict compliance with an express grant of authority.

The court said further that defendant had acquired no vested right in the use of such sign by the mere fact that the city had not prohibited such signs sooner:

"We recognize fully the rule of law as to abutting property owners. Such owners are entitled to use the property covered by an easement to such an extent as will not do violence to the full, free and complete exercise of the public easement. But if the public use demands, not only the space of the street and sidewalk, but the space above it, then the right of the property owner is subservient to such demand. When the sovereignty appropriates the property for a street, it is required to compensate the owner of the private property in the way of damages, but when the property is taken, it is taken for a public use and that use may be increased by the future developments of the municipality. As the use and necessary demands of the public increase the rights of the abutting property-owner decrease. . . ."

Another case upholding the authority of municipal authorities to adopt ordinances to be effective in certain limited areas is that of Berkau v. City of Little Rock, 174 Ark. 1145, 298 S. W. 514 (1927), wherein an ordinance regulating the size and construction of

signs over sidewalks was held to be a proper exercise of discretion by municipal authorities.

In State v. Wightman, 78 Conn. 86, 61 Atl. 56 (1905), a similar ordinance was held not subject to constitutional objection. Such ordinance is not oppressive. The court there held that evidence of the cost of the sign, and of the fact that it was sightly and safe was properly excluded. It approved the statement of the lower court that "signs projecting over sidewalks possess the element of danger to the traveling public . . ." and that they were therefore the proper subject of regulation.

As to the question of constitutionality of such ordinances, the Minnesota court answered thus in State v. Wong Hing, 176 Minn. 151, 222 N. W. 639 (1929):

"This contention (that such ordinance was unconstitutional) fails to give proper force to the purpose of the section in question and to the provision thereof that it applies only to signs projecting over public property; that is, over sidewalks and public ways. One purpose of the section is to safeguard public travel on streets and sidewalks. It is a police regulation for that purpose . . . it has no application to signs erected wholly on private property, but only to such as project into or over public ways. . . ."

From these authorities, it is evident that plaintiffs' objections to the ordinance are not well founded.

Although plaintiffs in their bill only hint at the illegality of the notice by averring that the city intends removing the signs "without due process of law", they argue the point directly and hence I will dispose of it.

Courts must take judicial notice of ordinances: Act of April 8, 1941, P. L. 16, 28 PS §301. The ordinance of July 26, 1920, related, in section 1, to signs on Chestnut Street and provided, in section 2, for 60 days' notice of removal. An ordinance of March 27,

1936, provided, in section 9, for 15 days' notice of removal and repealed, in section 15, all inconsistent ordinances, but specifically excepted section 1 of the ordinance of July 26, 1920, from the repealer. The ordinance of June 17, 1947, relating to signs on Walnut Street, contained no provision with regard to notice. It is therefore clear that 15 days' notice is legal and proper, under the ordinance of March 27, 1936.

The notices served on plaintiffs read: "In accordance with Ordinance approved June 17, 1947, (re signs on Chestnut and Walnut Streets) you are directed to remove illegal sign." Since the ordinance thus specifically referred to contains no other provisions than one section relating to signs on the named streets, plaintiffs could be under no misapprehension of what illegality was meant.

### Conclusions of Law

1. The Act of April 16, 1838, P. L. 626, sec. 3, gives plenary power to City Council of the City of Philadelphia to ordain the requirements of the ordinance, the validity of which is here at issue.

2. The ordinance of July 26, 1920, and the amendment thereto of June 17, 1947, were adopted in accordance with the power given by the Act of April 16, 1838, P. L. 626, sec. 3, and are constitutional.

3. The respective signs referred to in the findings of fact all project more than 18 inches past the revised building line of Walnut Street and are in violation of the ordinance of June 17, 1947.

4. The notices issued by the city are adequate and legal under the ordinance of March 27, 1936.

5. Plaintiffs have failed to comply with the provisions of the ordinance of July 26, 1920, and the amendment thereto of June 17, 1947.

6. The removal of the signs maintained by plaintiffs is legally justified.

*Decree Nisi*

And now, September 30, 1948, it is ordered, adjudged, and decreed that the bill is dismissed, costs to be paid by plaintiffs.